OPINION OF THE COURT
Guy P. De Phillips, J.
Petitioners in these adoption proceedings are the natural mother and stepfather of the subject children, Tara, born *100 August 1, 1986 and Maria, born April 29, 1984. The children are the issue of the marriage of the mother to Raymond S. which marriage was dissolved by divorce on October 29, 1987. The divorce decree of the Supreme Court of the State of New York, Queens County, granted custody of the children to the mother and contained no provision for visitation. On January 20, 1989 the mother married the copetitioner stepfather. Thereafter on January 30, 1989, the mother and stepfather filed the instant petitions for adoption dated January 27, 1989.
The court issued an order dated June 15, 1989 directing that notice of the filing of said petitions requesting an order approving and allowing said adoption be given to the natural father Raymond S. by personal service. Such notice was effected and the petitioners with their attorney and the natural father appeared before the court on July 25, 1989. At such hearing the following was disclosed. The children’s natural father left the family abode in December 1986 and was incarcerated from July 20, 1987 to November 25, 1987. He was subsequently incarcerated for two periods of 30 days each in January and March 1988. Thereafter he entered a residential drug treatment program from July 5, 1988 to June 1989. On December 15, 1988 the natural father Raymond S. filed petitions against the natural mother seeking visitation with their children Tara and Maria. On January 18, 1989, the return date of the orders to show cause initiating the visitation application, the natural father obtained a temporary order directing visitation under probation supervision. As noted, the natural mother and the stepfather of the children filed the instant adoption petitions on January 30, 1989. At the time of the preliminary hearing on July 25, 1989 on the issue of whether the natural father’s consent may be dispensed with on the ground of abandonment, the natural father was enjoying the visitation granted to him under the temporary order and was paying some amount toward the children’s support.
Raymond S. at the preliminary hearing stated that he did not try to see the children prior to his filing for visitation because he was under the apprehension that the mother would not cooperate and because his drug addiction problem constrained him from pursuing this course. Raymond voiced that he wished to rehabilitate himself by removing his dependency on drugs and becoming drug free and in that context to advance himself as a parent suitable to receive visitation. In this connection the natural father declared that while incarcerated and while in the residential drug program he was *101 unemployed and could not afford child support. There is conflict in the statements by the father that while incarcerated he contacted the mother to speak to the children and was refused and the mother’s declaration that he called only one time because he needed bail money. In any event the temporary order of visitation was subsequently modified to permit visitation monitored by probation and supervised by a relative of the children which visitation has continued unabated to the date of this decision and order.
Domestic Relations Law § 111 (1) (b) requires the consent of the natural father to the adoption which consent he is unwilling to give. The petitioners natural mother and stepfather claim that the consent of the natural father is not required citing Domestic Relations Law § 111 (2) which provides that
"[t]he consent shall not be required of a parent * * *
"(a) who evinces an intent to forego his or her parental * * * rights and obligations as manifested by his or her failure for a period of six months to visit the child and communicate with the child or person having legal custody of the child, although able to do so”.
In Matter of Corey L v Martin L (45 NY2d 383, 391 [1978]) the Court of Appeals aptly noted that "[abandonment, as it pertains to adoption, relates to such conduct on the part of a parent as evinces a purposeful ridding of parental obligations and the foregoing of parental rights — a withholding of interest, presence, affection, care and support. The best interests of the child, as such, is not an ingredient of that conduct and is not involved in this threshold question. While promotion of the best interests of the child is essential to ultimate approval of the adoption application, such interests cannot act as a substitute for a finding of abandonment (see Matter of Paden, 181 Misc 1025, 1027; 2 NY Jur, Adoption, § 2, p 5).”
It is undisputed that at the time of filing of the adoption petitions and of petitioners’ request that consent of the natural father be dispensed with, the natural father was visiting with his children pursuant to court order. Petitioners argue that the father’s past conduct constitutes abandonment within the meaning of Domestic Relations Law § 111 (2) (a). They point out that the six-month period set forth in the statute is not further delineated as to when such six-month period occurs. Dispensing with the father’s consent on the ground of abandonment and issuance of an order of adoption terminates said father’s parental rights. The amendments to Domestic *102 Relations Law § 111 enunciated in subdivision (6) thereof do not detract from the "heavy burden of constitutional magnitude on one who would terminate the rights of a natural parent through adoption” (Matter of Corey L v Martin L, supra, at 386-387). This heavy burden requires a showing of present intent to forego parental rights. It is significant that in enacting Domestic Relations Law § 111 (2) (a) the Legislature utilizes the term "evinces” and not "evinced” with respect to the intent to forego parental rights and obligations as shown by failure for a period of six months to visit the child and communicate with the child or person having legal custody of the child, although able to do so.
Further support for this conclusion derives from examination of statutory criteria for abandonment as dispensing with a parent’s consent or surrender in regard to adoption. Social Services Law § 384-b (4) (b) relating to procedure for the termination of the rights of the natural parent(s) provides for termination based on abandonment where "[t]he parent or parents, whose consent to the adoption of the child would otherwise be required in accordance with section one hundred eleven of the domestic relations law, abandoned such child for the period of six months immediately prior to the date on which the petition is filed in the court” (emphasis supplied). Social Services Law § 384 (1) (b) relating to commitment by surrender instrument whereby a child is freed for adoption by the parent executing the surrender dispenses with the necessity of obtaining a surrender from the other parent who has abandoned the child for a period of six months "then next preceding” the signing of the surrender. The reason for a current in praesenti six-month period of abandonment being required is the common sense realization that a "bright line” is necessary in calculating when such six-month period occurs. If a past six-month period of abandonment suffices, then any six-month period in the context of a parent-child relationship could arbitrarily be utilized as a basis for terminating parental rights regardless of the current or present state of that relationship. Such an approach is calculated to obtain absurd results and is not consonant with the constitutional magnitude underlying the concept of parental rights and responsibilities.
Matter of Ryan Paul L. (112 AD2d 47 [4th Dept 1985]), cited by petitioners’ counsel in his memorandum of law as "closely resembling the case at bar”, is consonant with the above observations. In that case the appellate court affirmed the *103 Family Court determination that the natural mother and her husband may proceed with the adoption of the infant without the consent of the natural father of the child. It was noted that "[t]he petition seeking the dispensation of [the natural father’s] consent to the adoption was filed on July 26, 1984. For 20 months prior thereto, [the natural father] had no communication with his son and did not attempt to communicate with the boy for 17 months prior to the petition. That [the natural father] made attempts, after the filing of the petition herein, to exercise rights of visitation long before accorded and consistently ignored is of no moment” (Matter of Ryan Paul L., supra, at 48; emphasis supplied). This case stands for the proposition that the period of abandonment for six months immediately prior to the petition seeking dispensation of the father’s consent is the critical time period.
All adoptions whether by way of private or agency placement are tunneled through article VII of the Domestic Relations Law (§§ 109-117). Dispensation of the consent required of a parent to adoption on the ground of abandonment whether effected via private placement under Domestic Relations Law § 111 or via agency placement under Social Services Law § 384-b operates to terminate parental rights. There is no basis in legal contemplation to distinguish between the parties seeking to terminate parental rights in terms of the burden of proof required and the showing required to demonstrate such abandonment. Indeed to do so would raise the grave implication of unequal protection of the laws. (See, NY Const, art I, § 11.) To hold that a parent whose parental rights are sought to be terminated on the ground of abandonment may confront a different applicable six-month period in terms of present or past abandonment based on the nature of the party seeking such termination is not integral to the viability of the parent-child relationship and creates a fact — the identity of the party seeking termination — not reasonably justifying the classification.
Accordingly the court holds as a matter of law on this record that the natural father’s filing of a visitation petition and obtaining of an order of visitation, albeit temporary at the present time, prior to the filing of an adoption petition by the petitioners, mother and stepfather, and prior to their request for the father’s consent to be dispensed with on the ground of abandonment, constitutes an inability to demonstrate abandonment as defined by statute.
The father has and is visiting with the children under the *104 order of visitation. His prior dereliction in maintaining a relation with the children has not continued and therefore is not relevant on the issue of abandonment viewed in the context of the foregoing analysis. Since the natural father’s consent is required and not forthcoming, the petitions for adoption are dismissed.