■ In the Matter of JONNA H., an Infant. EILEEN I. et al., Appellants; JOHN H., Respondent. [675 NYS2d 458] —Crew III, J. Appeal from an order of the Family Court of Schoharie County (Bartlett, III, J.), entered May 5, 1997, which dismissed petitioners' application, in a proceeding pursuant to Domestic Relations Law article 7, for adoption of Jonna H.

Petitioner Eileen I. (hereinafter the mother) and respondent are the biological parents of Jonna H. (born in 1990). In February 1996, the mother and her current spouse, petitioner Dennis I. (hereinafter the stepfather), commenced this proceeding pursuant to Domestic Relations Law article 7 seeking approval for the stepfather to adopt the minor child. In so doing, petitioners alleged, *inter alia*, that respondent's consent was not required as he had abandoned Jonna by failing to visit the child and/or provide financial support. At the conclusion of the hearing that followed, Family Court found that petitioners had failed to establish by clear and convincing evidence that respondent had abandoned his daughter. Accordingly, Family Court dismissed the petition for adoption and this appeal by petitioners ensued.

The Court of Appeals has instructed that "[a]bandonment, as it pertains to adoption, relates to such conduct on the part of a parent as evinces a purposeful ridding of parental obligations and the foregoing of parental rights—a withholding of interest, presence, affection, care and support" (*Matter of Corey L v Martin L*, 45 NY2d 383, 391). In this regard, the intent to forego such parental rights and obligations must be established by clear and convincing evidence, and "a biological parent's failure to visit and pay support, although significant, are not determinative factors where they are properly explained" (*Matter of Joshua*, 216 AD2d 749, 751, *lv denied* 86 NY2d 709).

Here, although respondent admittedly left the mother when

she was six months pregnant, he was present for his child's birth and, according to the mother, saw Jonna every six to eight months after that, including her first birthday party. Additionally, the mother acknowledged that respondent sent the child birthday and Christmas cards, and the record established that respondent also sent the child age-appropriate gifts. Although petitioners characterize such contacts as "insubstantial" and argue that respondent's "sporadic" visitations should not preclude a finding of abandonment, we are of the view that respondent has provided an adequate explanation for both his failure to see his child with greater regularity and his poor history of child support payments.*

The record reveals that following his daughter's birth, respondent developed a substance abuse problem and, after a near fatal overdose in May 1993, entered a treatment program for approximately three months, during which time he apparently was not permitted to contact his child. It also appears that during the relevant time period, respondent was receiving treatment for a personality disorder. Additionally, the mother conceded at trial that she would not permit respondent, who relocated to Florida in January 1995 for financial reasons and thereafter lacked the funds to visit Jonna in this State, to disclose to Jonna that he was her father. In our view, respondent's personal difficulties, coupled with the limitations imposed by the mother, certainly hindered respondent's ability to foster a meaningful relationship with his daughter. As to the issue of child support, respondent, who voluntarily surrendered his professional license in an apparent attempt to avoid disciplinary charges, testified that he lived with his mother and primarily was employed as a waiter. Although the record indicates that respondent did earn certain income following his relocation to Florida, the record also reveals that respondent was unable to work for four months due to the injuries he sustained in a motor vehicle accident, as the result of which he incurred significant medical expenses. In sum, although respondent has not been a model parent, the record does not support a finding that he abandoned his child. Accordingly, Family Court properly dismissed the petition for adoption.

Yesawich Jr., Spain and Graffeo, JJ., concur.

Cardona, P. J. (dissenting). I respectfully dissent. In my view, although respondent may have been well-intentioned, petitioners established by clear and convincing evidence that respon-

---

* In this regard, the mother testified that respondent had not made any support payments during the three years prior to the hearing and had made only 13 or 14 such payments since the child's birth.

dent "evince[d] an intent to forego his * * * parental or custodial rights and obligations as manifested by his * * * failure for a period of six months to visit the child and communicate with the child" (Domestic Relations Law § 111 [2] [a]). There is no dispute in the record that respondent's last visit with his six-year-old daughter occurred in June 1994, more than 18 months prior to the filing of the instant petition on February 9, 1996. He had no direct communication with her during that period nor did he pay any court-ordered child support. Thinking about your child is simply not enough to fulfill a parent's responsibility toward that child. Between the filing of the petition and the date of the instant hearing on September 26, 1996, he paid only $6.17 (through income execution) despite his admission that there were times when he had money and had no excuse for not sending it.

Furthermore, respondent's testimony that he suffered from a "personality disorder" is not substantiated by expert testimony and, in any event, was not sufficient to excuse respondent's lack of direct contact with the child. As for his drug addiction, I note that respondent completed a rehabilitation program by September 1994. Additionally, his claim that the mother hindered his ability to foster a meaningful relationship with his daughter was not sufficient to justify his failure to communicate and visit with the child. Moreover, that claim is belied by his relocation to Florida in January 1995 and his failure to seek court intervention to counter any perceived interference. Notably, there is no evidence that the mother ever refused a request for access.

In my opinion, the record contains a sufficient factual basis to reject respondent's excuses for failing to visit and communicate with his daughter and satisfies the statutory requirements for dispensing with his consent to the adoption (see, Matter of Amy SS., 100 AD2d 657, revd on dissenting opn below 64 NY2d 788). Unfortunately, respondent has not fulfilled by affirmative acts his parental obligations to this child. He cannot defeat the claim of abandonment by sending occasional gifts and cards. Accordingly, I would reverse, reinstate the petition and remit the matter to Family Court for further proceedings.

Ordered that the order is affirmed, without costs.