In the Matter of Adoption of JULIA P., an Infant. TINA B. et al., Respondents; ROBERT P., Appellant. [760 NYS2d 793] —Appeal from an order of Family Court, Jefferson County (Hunt, J.), entered March 5, 2002, which dispensed with the consent of respondent to the adoption of his daughter.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously affirmed without costs.

Memorandum: Family Court properly dispensed with the consent of respondent, the birth father, to the adoption of his daughter Julia P. on the ground of abandonment (see Domestic Relations Law § 111 [2] [a]) and granted the petition allowing Julia's stepfather to adopt Julia. The proof establishes that Julia's mother is respondent's adopted daughter and that Julia was conceived in an act of incestuous rape when her mother was 15 years old. Several years after Julia was born, her mother disclosed the criminal acts of respondent, as a result of which he was convicted in criminal court of sexual abuse in the first degree (Penal Law § 130.65) and sentenced to a period of incarceration. In a related child protective proceeding, Family Court found, inter alia, that respondent raped Julia's mother and derivatively neglected Julia. Orders of protection were issued by both courts prohibiting any contact between respondent and either Julia or her mother.

More than six months after respondent was incarcerated, petitioners, Julia's mother and stepfather, commenced this proceeding to allow the stepfather to adopt Julia. In support of their contention that the consent of the birth father is not required because of abandonment, petitioners established that, in the six months preceding the petition, respondent had not provided financial support for Julia and had not communicated with Julia or her mother. Respondent contends that his failure to communicate with Julia or her mother cannot constitute abandonment because the orders of protection precluded such contact. We reject that contention. Neither the orders of protection prohibiting contact with Julia or her mother nor his incarceration prevented respondent from contacting the Jefferson County Department of Social Services, the agency supervising Julia's care pursuant to the order of fact-finding and disposition in the child protective proceeding (see Matter of Krysheena, 265 AD2d 816 [1999]; see also Matter of Jasmin E.R., 303 AD2d 1034 [2003]). The vague and conclusory testimony of respondent that, at some time during his incarceration, he wrote to the Department of Social Services is insuf-

ficient to establish that he did so within the six months preceding the filing of the petition and that he did so with the intent to communicate with Julia.

More importantly, where, as here, "the biological parent's inability to visit with the child[ ] results from his own deliberate acts, the underlying circumstances need not preclude a finding of a lack of contact with the child[ ] evincing an intent to abandon [her]" (*Matter of Joshua II*, 296 AD2d 646, 648 [2002], *lv denied* 98 NY2d 613 [2002]). In this case, there is no doubt that the inability of respondent to visit with Julia is a direct result of his own deliberate criminal acts. Present—Pigott, Jr., P.J., Pine, Hurlbutt, Burns and Lawton, JJ.