Matter of Madelyn V. (Lucas W.--Jared V.) (2021 NY Slip Op 06579)





Matter of Madelyn V. (Lucas W.--Jared V.)


2021 NY Slip Op 06579


Decided on November 24, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 24, 2021

531232
[*1]In the Matter of Madelyn V., an Infant. Lucas W., Respondent; Jared V., Appellant.

Calendar Date:October 12, 2021

Before:Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Lisa K. Miller, McGraw, for appellant.
Jackson Bergman, LLP, Binghamton (Dhyana M. Estephan of counsel), for respondent and Nikki V.
William L. Koslosky, Utica, attorney for the child.



Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Broome County (Connerton, J.), entered February 21, 2021, which granted petitioner's application, in a proceeding pursuant to Domestic Relations Law article 7, to determine that respondent's consent was not required for the adoption of his child.
Respondent and Nikki V. (hereinafter the mother) are the parents of a child (born in 2011), who was born during their marriage. In 2017, after the parties had divorced, respondent was convicted of attempted sexual assault of a minor child and sentenced to a prison term of eight years. Petitioner and the mother began living together in 2016 and married in 2019. Shortly thereafter, petitioner commenced this proceeding to adopt the child, alleging that respondent had abandoned the child and that, as such, his consent was not required. Following a hearing, Family Court granted the petition, finding there had been no substantial contact between respondent and the child during the six months prior to the commencement of the proceeding. Respondent appeals.
In general, the consent of both parents of a child born to a married couple is required before the child may be adopted by others (see Domestic Relations Law § 111 [1] [b]). However, consent to adoption shall not be required of a parent "who evinces an intent to forego his or her parental or custodial rights and obligations as manifested by his or her failure for a period of six months to visit the child and communicate with the child or person having legal custody of the child, although able to do so" (Domestic Relations Law § 111 [2] [a]). "Once the petitioning party makes such a showing by clear and convincing evidence, the burden shifts to the parent to demonstrate sufficient contact or an inability to engage in such contact. Notably, the mere fact that a parent is incarcerated does not relieve him or her of the obligation to make contact and to support the child, and a parent's subjective intent, unsupported by acts, is insufficient to avoid a finding of abandonment" (Matter of Hayden II. [Renee II.—Devan JJ.], 135 AD3d 997, 998-999 [2016] [internal quotation marks, brackets and citations omitted], lv denied 27 NY3d 904 [2016]; see Matter of Amanda EE. v Nicholas FF., 144 AD3d 1427, 1428 [2016]).
The mother testified that during the relevant six-month period, respondent failed to contact or communicate in any way with her or the child. She avowed that respondent had not provided any financial support for the child and that, despite the fact that her phone number and address were known to respondent, neither she nor the child had received any phone calls, cards or letters from him.[FN1] "This testimony was sufficient to meet petitioner['s] initial burden and to shift the burden to respondent to demonstrate that he made sufficient contact with the child or was unable to do so" (Matter of Mia II. [Theresa JJ.—Michael II.], 75 AD3d 722, 723 [2010] [citations omitted], lv denied 15 NY3d 710 [2010]; see Matter [*2]of Hayden II. [Renee II.—Devan JJ.], 135 AD3d at 999).
Respondent conceded that he had not had any visitations with the child while he has been incarcerated, nor has he attempted to phone the mother or the child during this time.[FN2] He further admitted that he had not provided any financial support for the child. However, in contrast to the mother's testimony that neither she nor the child had received any letters and cards from him, respondent said that he did in fact send letters and cards to the child and the mother. Moreover, he testified that he kept carbon copies of these items, which he then submitted into evidence.
Respondent's claims that he attempted to communicate with the child created a credibility issue for Family Court to resolve, and the court found that respondent was not credible. "We give deference to the court's credibility determinations resolving conflicting testimony in favor of petitioner's witnesses rather than respondent" (Matter of Asia ZZ. [Henry A.—Jason V.], 97 AD3d 865, 866 [2012] [citations omitted]; see Matter of Khrystopher EE. [David FF.—Michael EE.], 182 AD3d 672, 674 [2020]; Matter of John Q. v Erica R., 104 AD3d 1097, 1099 [2013]). As respondent acknowledged that he did not visit, call or financially support the child, and according deference to Family Court's credibility determinations, the record supports the court's conclusion that respondent's consent was not required (see Matter of Emma K. [Wendy I.—Matthew K.], 132 AD3d 1111, 1112 [2015]; Matter of Dakiem M. [Demetrius O.—Dakiem N.], 94 AD3d 1362, 1364 [2012], lv denied 19 NY3d 807 [2012]).
Respondent next contends that the petition should be dismissed, and the order vacated, based on petitioner's failure to appear at the hearing. However, as this contention was not raised before Family Court, it is not preserved for our review. (see Matter of Daniel C. v Joanne C., 182 AD3d 711, 716 [2020]; Matter of Hayley QQ. [Heather RR.], 176 AD3d 1343, 1345 [2019]).
Finally, respondent claims that he received the ineffective assistance of counsel. "A parent alleging ineffective assistance of counsel must demonstrate that he or she was deprived of reasonably competent and, thus, meaningful representation" (Matter of Ronan L. [Jeana K.], 195 AD3d 1072, 1077 [2021] [internal quotation marks and citations omitted]). "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, a respondent's constitutional right to the effective assistance of counsel will have been met" (Matter of Duane FF. [Harley GG.], 154 AD3d 1086, 1088 [2017], lv denied 30 NY3d 908 [2018] [internal quotation marks and citation omitted]).
Respondent first contends that his counsel was ineffective in failing to move for a default based on petitioner's nonappearance at the hearing. It is beyond cavil that a party's failure to appear does not automatically [*3]result in a default, especially where counsel appears on the party's behalf (see Matter of Madison P. [Kaitlin R.], 151 AD3d 1300, 1302 [2017]). Although at the hearing petitioner's counsel may have only referenced that she represented the mother, the record is clear that she represented petitioner as well, and that petitioner, through counsel, was prepared for and presented evidence at the hearing by calling the mother — a party in interest — who had the greatest first-hand information as to the issue in this hearing. As such, petitioner called an appropriate witness, proceeded with his petition and "prosecuted" his case. Moreover, petitioner's testimony was not required and indeed may have been superfluous and cumulative to the mother's testimony. Additionally, respondent's contention that petitioner was not subject to cross-examination on various matters — i.e., his desire to adopt the child, his relationship to the child, his criminal history and his unstable living history — is immaterial and irrelevant to the sole issue at this hearing, namely, whether respondent had meaningful communication with the child in the six months prior to the petition. Further, the failure to make a motion for default, which is based on speculation that Family Court would have granted the motion, does not lead to the conclusion that respondent was deprived of effective counsel (see Matter of Chaquill R., 55 AD3d 975, 977 [2008], lv denied 11 NY3d 715 [2009]; Matter of Gregory AA., 20 AD3d 726, 727 [2005]).
Respondent also cites his attorney's failure to call certain witnesses as a basis for his ineffective assistance claim. However, "the failure to call particular witnesses does not necessarily constitute ineffective assistance of counsel —
particularly where the record fails to reflect that the desired testimony would have been favorable" (Matter of Ysabel M. [Ysdirabellinna L.—Elvis M.], 137 AD3d 1502, 1505 [2016] [internal quotation marks, ellipsis and citations omitted]). Respondent's claims regarding the crucial nature of the testimony of uncalled certain witnesses are based on nothing more than speculation and conjecture. Respondent's counsel elicited detailed testimony from respondent, cross-examined the mother and submitted an appropriate written closing argument after the hearing (see Matter of Bella FF. [Margaret GG.—James HH.], 130 AD3d 1187, 1190 [2015]). We are therefore satisfied that respondent received the effective assistance of counsel (see Matter of Ronan L. [Jeana K], 195 AD3d at 1077; Matter of Duane FF. [Harley GG.], 154 AD3d at 1088-1089).
Garry, P.J., Lynch, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The mother's testimony to this effect was based solely on her personal knowledge. However, her current address was listed on the grandparent visitation petition — filed by the paternal grandmother — which respondent received.

Footnote 2: He explained the latter stating that he cannot phone the child since the mother's phone number is not registered with the prison, and he does not have the requisite funds in his account to make the call. At the same time, he admitted that he never asked the mother to register her number.